**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **RYAN T. HUNTER,** | : | **Civil No. 1:12-CV-2013** |
| | : | |
| **Plaintiff** | : | **(Magistrate Judge Carlson)** |
| | : | |
| **v.** | : | |
| | : | |
| **STEVEN PRISBE and** | : | |
| **CITY OF HARRISBURG,** | : | |
| | : | |
| **Defendants** | : | |

## MEMORANDUM

## I. INTRODUCTION

Now pending before the Court is the defendants' motion to dismiss the plaintiff's complaint, which alleges a variety of civil rights violations stemming from the issuance of a citation to the plaintiff by an off-duty police officer following a traffic dispute between the officer and the plaintiff. The motion is fully briefed and ripe for disposition. Following review of the briefs, it appears that the parties agree that several of the claims initially alleged in the complaint should be dismissed, but disagree as to the defendants' arguments that the remaining claims have not been sufficiently pled to withstand a threshold motion to dismiss. For the reasons that follow, the defendants' motion to dismiss will be granted, in part, and denied in part.

## II.  BACKGROUND

An overheated verbal exchange between a Harrisburg pedestrian and an off-duty police officer behind the wheel of his own vehicle appears to have inspired the above-captioned civil rights litigation.  The plaintiff, Ryan Hunter, alleges that on May 6, 2012, shortly before 10:00 p.m., he and his wife were walking in downtown Harrisburg and had stopped on the sidewalk between the northwest corner of Second and Walnut Streets.  According to the complaint, the crossing light indicated that Mr. Hunter and his wife were clear to walk across the crosswalk, and they proceeded to do so.  When the couple was approximately three-quarters of the way through the intersection, Steven Prisbe, a police corporal employed by the Harrisburg Bureau of Police, navigated his civilian sedan from Second Street onto Walnut Street, into the crosswalk, nearly striking the plaintiff's wife in the process.  (Doc. 1, Compl. at ¶¶ 5-10.)

Concerned for his wife's safety, the plaintiff proceeded to, in his words, "exercis[e] his right to freedom of speech guaranteed by the First Amendment to the U.S. Constitution, [by] remind[ing] the driver of the sedan that in the Commonwealth of Pennsylvania pedestrians have a right-of-way."  (Id. at ¶ 11.)  Although the plaintiff does not elaborate on what exactly he said to the driver of the sedan, it appears that whatever he said struck a nerve, and the driver of the sedan shouted at

Mr. and Mrs. Hunter to remain where they were. (Id. at 12.) Thereafter, the plaintiff claims that the driver of the sedan "erratically pulled to the northwest corner of Second Street and Walnut Street and parked" before running across the street towards them, in spite of a "no walk" signal indicating that pedestrians were not permitted to cross at that time. (Id. at ¶ 14.)

Although he allegedly did not initially identify himself as a police officer, and presented in dark clothing with his shirttail untucked, the driver of the sedan nevertheless demanded that the plaintiff produce his driver's license. (Id. at ¶ 16.) When the plaintiff asked why he should give his license to a civilian, the driver of the sedan asked the plaintiff if he was "disobeying the lawful order of a police officer." (Id. at ¶ 17.) Thereafter, the plaintiff produced his identification, which the driver of the sedan took with him to his vehicle where he made a phone call. (Id. at ¶ 19.) After a few minutes, the driver came back and informed the plaintiff that he would be receiving a citation in the mail. (Id.) When Mr. Hunter asked why he would be getting a citation, the driver of the vehicle told Mr. Hunter to "just keep talking and see what happens." (Id. at ¶ 20.) Mr. Hunter persisted in asking why he would be receiving a citation, and the driver of the sedan – apparently by this time identified as Corporal Steven Prisbe – took the plaintiff's driver's license, returned to this vehicle, and drove off. (Id. at ¶ 21.)

The plaintiff and his wife went to the nearby police station at 123 Walnut Street to retrieve his identification, but no one at the station would respond to their requests. (Id.) After returning home, Mr. Hunter called the police station several times to request the return of his license, but the police department refused to do so, and similarly refused a request made by the plaintiff's wife. (Id. at ¶ 22.)

The following day, May 7, 2012, the plaintiff's wife called the police station to report what she believed to have been the unlawful conduct of Corporal Prisbe. She was informed that Mr. Hunter's identification was at the station and available to be retrieved. She also learned that Corporal Prisbe had issued an incident report indicating that Mr. Hunter refused to take his license back the previous day. (Id. at ¶ 23.) When Mr. Hunter called the station to complain about Corporal Prisbe's conduct, he was told by Corporal Prisbe's supervisor that his conduct was "acceptable." (Id. at ¶ 24.)

On May 29, 2012, Mr. Hunter submitted a Citizen's Complaint Form regarding the May 6, 2012 incident. (Id. at ¶ 26.) On May 21, 2012, Corporal Prisbe filed a traffic citation against Mr. Hunter for Failure of Pedestrian to Exercise Care, in

violation of 75 Pa. C.S. §§ 3542.[1]  (Id. at ¶ 27.)  On August 2, 2012, Mr. Hunter was found not guilty of the citation.  (Id. ¶ 28.)

On October 5, 2012, the plaintiff filed a complaint to initiate this lawsuit. (Doc. 1.)  The complaint alleges that the defendants' conduct was undertaken in retaliation, or in order to curtail, the plaintiff from "engaging in expressive speech in this public forum," and thus violated the plaintiff's rights under the First Amendment. (Doc. 1, Count I.)  In Count II, the plaintiff alleges that the "individual defendants" violated his rights under the Fourth, Fifth, and Fourteenth Amendments by subjecting him to a false arrest, and detaining the plaintiff, with no lawful basis to do so.  (Doc. 1, Count II.)  In Count III, the plaintiff brings a claim for malicious prosecution arising out of the criminal proceedings that were terminated in his favor on the charge of failing to exercise care.  (Doc. 1, Count III.)  In Count IV, the plaintiff alleges that the defendants falsely imprisoned him, in violation of the Fourteenth Amendment. (Doc. 1, Count IV.)  Lastly, in Count V, the plaintiff brings a Monell claim for

_____

[1] This statutory provision provides, in pertinent part, as follows:  No pedestrian shall suddenly leave a curb or other place of safety and walk or run into the path of a vehicle which is so close as to constitute a hazard."  75 Pa. Cons. Stat. Ann. § 3542(b).  Although the statute provides penalties for the driver of a vehicle who violates subsection (a) of the statute, which requires drivers to yield to pedestrians crossing within a crosswalk, the statute does not appear to prescribe penalties for pedestrians who fail to exercise care in violation of subsection (b) of the law.  See 75 Pa. Cons. Stat. Ann. § 3542(a)-(e).

municipal liability against the City of Harrisburg, alleging that "[t]he City maintained policies, practices, and customs, which were the moving force that resulted in the plaintiff's constitutional rights being violated," and that despite being on notice of the need for policies or further training for its officers, the City failed to fulfill its obligation to provide such. (Doc. 1, at Count V.)

On December 4, 2012, the defendants moved to dismiss all counts in the complaint, with the exception of the plaintiff's claim for alleged First Amendment violations in Count I, and the malicious prosecution claims set forth in Count III.[2] (Doc. 14). The defendants filed a brief in support of their motion on December 18, 2012. (Doc. 15.) After the defendants moved to dismiss, the parties participated in mediation proceedings, which ultimately were unsuccessful, and the plaintiff filed a brief in opposition to the motion on February 1, 2013. (Doc. 20.) On February 15, 2013, the defendants filed a reply brief in further support of their motion.

---

[2] In their motion to dismiss, the defendants expressly note that they are not moving to dismiss the plaintiff's claims for malicious prosecution at this time. (Doc. 15, at 5 n.1.) Although the defendants do not similarly acknowledge that they have not moved for dismissal of the plaintiff's First Amendment claims, the defendants' brief is silent as to any reasons why the First Amendment claims should be dismissed. Accordingly, we will not discuss the merits of this claim in this memorandum.

## II.  STANDARD OF REVIEW

With respect to this benchmark standard for legal sufficiency of a complaint, the United States Court of Appeals for the Third Circuit has aptly noted the evolving standards governing pleading practice in federal court, stating that:

> Standards of pleading have been in the forefront of jurisprudence in recent years. Beginning with the Supreme Court's opinion in <u>Bell Atlantic Corp. v. Twombly,</u> 550 U.S. 544 (2007) continuing with our opinion in <u>Phillips</u> [<u>v. County of Allegheny</u>, 515 F.3d 224, 230 (3d Cir. 2008)]and culminating recently with the Supreme Court's decision in <u>Ashcroft v. Iqbal</u>  –U.S.–, 129 S.Ct. 1937 (2009) pleading standards have seemingly shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss.

<u>Fowler v. UPMC Shadyside</u>, 578 F.3d 203, 209-10 (3d Cir. 2009).

In considering whether a complaint fails to state a claim upon which relief may be granted, the Court must accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom are to be construed in the light most favorable to the plaintiff.  <u>Jordan v. Fox Rothschild, O'Brien & Frankel, Inc.</u>, 20 F.3d 1250, 1261 (3d Cir. 1994).  However, a court "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." <u>Morse v. Lower Merion Sch. Dist.</u>, 132 F.3d 902, 906 (3d Cir. 1997).  Additionally a court need not "assume that a ... plaintiff can prove facts that the ... plaintiff has not alleged."  <u>Associated Gen. Contractors of Cal. v. California State Council of</u>

_Carpenters_, 459 U.S. 519, 526 (1983). As the Supreme Court held in _Bell Atlantic Corp. v. Twombly_, 550 U.S. 544 (2007), in order to state a valid cause of action a plaintiff must provide some factual grounds for relief which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of actions will not do." _Id._ at 555. "Factual allegations must be enough to raise a right to relief above the speculative level." _Id._

In considering whether a complaint fails to state a claim upon which relief may be granted, the Court must accept as true all allegations in the complaint and all reasonable inferences that can be drawn from the complaint are to be construed in the light most favorable to the plaintiff. _Jordan v. Fox Rothschild, O'Brien & Frankel, Inc._, 20 F.3d 1250, 1261 (3d Cir. 1994). However, a court "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." _Morse v. Lower Merion Sch. Dist._, 132 F.3d 902, 906 (3d Cir. 1997). Additionally a court need not "assume that a ... plaintiff can prove facts that the ... plaintiff has not alleged." _Associated Gen. Contractors of Cal. v. California State Council of Carpenters_, 459 U.S. 519, 526 (1983). As the Supreme Court held in _Bell Atlantic Corp. v. Twombly_, 550 U.S. 544 (2007), in order to state a valid cause of action a plaintiff must provide some factual grounds for relief which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of

actions will not do."  Id. at 555.  "Factual allegations must be enough to raise a right to relief above the speculative level."  Id.

In keeping with the principles of Twombly, the Supreme Court has underscored that a trial court must assess whether a complaint states facts upon which relief can be granted when ruling on a motion to dismiss.  In Ashcroft v. Iqbal, 556 U.S. 662 (2009), the Supreme Court held that, when considering a motion to dismiss, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth."  Id. at 679.  According to the Supreme Court, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Id. at 678.  Rather, in conducting a review of the adequacy of complaint, the Supreme Court has advised trial courts that they must:

> [B]egin by identifying pleadings that because they are no more than conclusions are not entitled to the assumption of truth.  While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.  When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

Id. at 679.

Thus, following Twombly and Iqbal a well-pleaded complaint must contain more than mere legal labels and conclusions.  Rather, a complaint must recite factual allegations

sufficient to raise the plaintiff's claimed right to relief beyond the level of mere

speculation.  As the United States Court of Appeals for the Third Circuit has stated:

> [A]fter Iqbal, when presented with a motion to dismiss for failure to
> state a claim, district courts should conduct a two-part analysis.  First,
> the factual and legal elements of a claim should be separated.  The
> District Court must accept all of the complaint's well-pleaded facts as
> true, but may disregard any legal conclusions.  Second, a District Court
> must then determine whether the facts alleged in the complaint are
> sufficient to show that the plaintiff has a 'plausible claim for relief.'  In
> other words, a complaint must do more than allege the plaintiff's
> entitlement to relief.  A complaint has to 'show' such an entitlement
> with its facts.

Fowler, 578 F.3d at 210-11.

In undertaking this task, the court generally relies only on the complaint,

attached exhibits, and matters of public record.  Sands v. McCormick, 502 F.3d 263,

268 (3d Cir. 2007).  The court may also consider "undisputedly authentic document[s]

that a defendant attached as an exhibit to a motion to dismiss if the plaintiff's claims

are based on the [attached] documents."  Pension Benefit Guar. Corp. v. White

Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993).  Moreover, "documents whose

contents are alleged in the complaint and whose authenticity no party questions, but

which are not physically attached to the pleading, may be considered."  Pryor v. Nat'l

Collegiate Athletic Ass'n, 288 F.3d 548, 560 (3d Cir. 2002); see also, U.S. Express

Lines, Ltd. v. Higgins, 281 F.3d 382, 388 (3d Cir. 2002) (holding that "[a]lthough a

district court may not consider matters extraneous to the pleadings, a document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss in one for summary judgment.") However, the court may not rely on other parts of the record in determining a motion to dismiss. Jordan v. Fox, Rothschild, O'Brien &Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994).

## IV.   DISCUSSION

### A.   Plaintiff's Fifth Amendment and Duplicative Substantive Due Process Claims Will Be Dismissed

At the outset, we observe that the plaintiff agrees that his claims brought for violations of the Fifth Amendment should be dismissed, as he has not brought claims against any federal officials, and because there is no other basis for these claims. (Doc. 20, at 5.)   Given the parties' agreement, the plaintiff's claims asserting violations of the Fifth Amendment will be dismissed.

In addition, the plaintiff concedes that claims brought under Counts II, IV, and V should be dismissed to the extent those counts contain claims brought for alleged Fourteenth Amendment substantive due process violations, where the claimed violations are covered by another specific constitutional provision. (Id. at 5-6.)   In this case, the plaintiff has brought claims stemming from what he alleges was a false

arrest and false imprisonment, which he now concedes should be construed as claims brought for unlawful seizures in violation of the Fourth Amendment.

The Third Circuit has explained that "if a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process." Betts v. New Castle Youth Dev. Ctr., 621 F.3d 249, 260 (3d Cir. 2010) (citing United States v. Lanier, 520 U.S. 259, 272 n.7 (1997)).  Consistent with this rule, the plaintiff now concedes that his claims for improper arrest and related claims for false imprisonment are properly analyzed under the Fourth Amendment, and that the plaintiff's duplicative substantive due process claims relating to this same alleged conduct should be dismissed under the "specific provision" rule explained in Betts.  We agree, and in accordance with the law in this field and the parties' agreement, we will dismiss the plaintiff's substantive due process claims alleged in the complaint.

**B.    The Plaintiff's Claims That Corporal Prisbe Subjected Him to an Unlawful Seizure Will Not Be Dismissed at this Time**

The defendants next argue that the plaintiff's claims for false arrest and false imprisonment articulated in Counts II, IV, and V of the complaint should be dismissed because the plaintiff was not, in fact, ever arrested or imprisoned by

Corporal Prisbe or any other police officer during the incidents alleged in the complaint. Essentially, the defendants maintain that the plaintiff's false arrest or false imprisonment claims fail because the plaintiff was never actually "arrested," and because the mere issuance of a traffic citation, standing alone, will not support a claim for unlawful seizure.

Plaintiff brings both discrimination and retaliation claims under 42 U.S.C. § 1983, which provides that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage . . . subjects, or causes to be subjected, any citizen . . . or any other person . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured." Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." City of Monterey v. Del Monte Dunes, 526 U.S. 687, 749 n.9 (1999).

In order to prevail in an action brought under section 1983, "a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." Harvey v. Plains Twp. Police Dep't, 421 F.3d 185, 189 (3d Cir. 2005) (quoting West v. Atkins, 487 U.S. 42, 48 (1988)). Accordingly, the first

step in evaluating a § 1983 claim is "'to identify the exact contours of the underlying rights said to have been violated' and to determine 'whether the plaintiff has alleged the deprivation of the constitutional right at all.'" <u>Kaucher v. County of Bucks</u>, 455 F.3d 418, 423 (3d Cir. 2006) (quoting <u>Nicini v. Morra</u>, 212 F.3d 798, 806 (3d Cir. 2000) (quoting <u>County of Sacramento v. Lewis</u>, 523 U.S. 833, 841 n.5 (1988)).

Regardless of the language that the plaintiff has used to characterize his Fourth Amendment claims relating to "false arrest" or "false imprisonment," at this point of the litigation we construe the plaintiff to be alleging that he was subject to an unlawful seizure of his person, and perhaps of his personal property, by Corporal Prisbe on May 6, 2012. For purposes of the Fourth Amendment, "[a] seizure occurs when there is either (a) 'a laying on of hands or application of physical force to restrain movement, even when it is ultimately unsuccessful,' or (b) submission to 'a show of authority.'" <u>United States v. Brown</u>, 448 F.3d 239, 245 (3d Cir. 2006) (quoting <u>California v. Hodari D.</u>, 499 U.S. 621, 626 (1991)). Stated differently,

> when a seizure is effected by even "the slightest application of physical force," it is immaterial whether the suspect yields to that force. In contrast, if a suspect in the absence of physical force does not submit to an officer's show of authority, there is no seizure and no Fourth Amendment claim. "[T]he test for existence of a "show of authority" is an objective one: not whether the citizen perceived that he was being ordered to restrict his movement, but whether the officer's words and actions would have conveyed that to a reasonable person."

Brown, 448 F.3d at 245 (quoting Hodari D., 499 U.S. at 625-28) (internal citations omitted).

In this case, the defendants argue that the plaintiff's claims that he was subject to an unlawful seizure on May 6, 2012, must be dismissed because "it is unequivocal that Plaintiff was not 'seized' for purposes of a Fourth Amendment and/or false imprisonment claim." (Doc. 15, at 7.) In support of this assertion, the defendants rely on two unpublished decisions from the United States Court of Appeals for the Third Circuit, which the defendants construe to hold that the mere issuance of a citation by a police officer will not support a false arrest or unlawful seizure claim. In these cases, however, the Third Circuit was addressing cases that came before the court following the entry of summary judgment – not following a motion to dismiss. See Crock v. Pennsylvania, 397 F. App'x 747, 750 (3d Cir. 2010); Kartorie v. Dunham, 108 F. App'x 694, 700 (3d Cir. 2004). However, in those cases, with fully developed evidentiary records, the courts were in a position to determine whether the plaintiffs had adduced sufficient facts to support their claims for unlawful seizures. Thus, these cases actually underscore that an assessment of whether specific conduct rose to the level of an unreasonable seizure is often a fact-bound exercise which is often not amenable to resolution on a motion to dismiss. See Brown v. Muhlenberg Twp., 269 F.3d 205 (3d Cir. 2001)(denying summary judgment due to factual disputes).

Upon consideration, we do not find that these decisions, which issued at a different procedural posture of the litigation, compel the dismissal of the plaintiff's claims in this case at this time. Although not entirely clear, we note that the complaint alleges that the seizures identified in the complaint stemmed not simply from the issuance of a citation, but from Corporal Prisbe's alleged actions during the incident, which were, according to the plaintiff, by turns confusing, demanding, threatening, and wholly unwarranted. Read in the light most favorable to the plaintiff, the complaint alleges that Corporal Prisbe acted unlawfully by ordering the plaintiff and his wife to stop walking and to wait along a city sidewalk, before accosting the couple and demanding that the plaintiff produce his identification – identification that Corporal Prisbe is alleged to have taken with him when he left the scene after informing the plaintiff that he would be receiving a citation.

As noted, "the test for existence of a 'show of authority' is an objective one: not whether the citizen perceived that he was being ordered to restrict his movement, but whether the officer's words and actions would have conveyed that to a reasonable person." Brown, 448 F.3d at 245. In this case, the plaintiff has alleged that he did not feel he was free to leave the scene, and accordingly submitted to Corporal Prisbe's demands, after the defendant asked him in a threatening manner whether he was "disobeying the lawful order of a police officer." (Doc. 1 at ¶ 17.) When the

plaintiff asked why he was going to be cited, Corporal Prisbe allegedly responded by stating, "just keep talking and see what happens." (Id. at ¶ 20.) The facts that allegedly preceded this encounter – a confrontation between a pedestrian and a motorist, later revealed to be an off-duty police officer – coupled with what he claims to have been threatening demands and statements by Corporal Prisbe, cause us to find that the plaintiff's claims that he was subject to an unlawful seizure cannot be resolved in the context of a motion to dismiss. Although additional facts may come out through discovery that may support or undermine this claim, the plaintiff's allegations in the complaint are sufficient to claim that Corporal Prisbe's words and actions "would have conveyed [] to a reasonable person" that "he was being ordered to restrict his movement." Hodari D., 499 U.S. at 628. The defendants' motion to dismiss these claims will be denied at this time.

### C. A Decision on the Plaintiff's Monell Claim Must Also Await Further Development of the Factual Record

Finally, the defendants argue that the plaintiff has failed to plead a cognizable claim for § 1983 municipal liability.

Plaintiff brings a claim for municipal liability against the City of Harrisburg for Corporal Prisbe's conduct, on the grounds that the City maintained policies or practices that facilitated the misconduct alleged in this case, or otherwise because the

City has failed adequately to train and supervise its police officers, or to respond to the kinds of issues involving police officers that are alleged in this case. The complaint is, to be sure, somewhat long on general factual averments and short on specific allegations. Nevertheless, upon consideration, construing the allegations in the light most favorable to the plaintiff, and mindful of the plaintiff's claims that they were either repeatedly denied assistance by the City of Harrisburg Police Department, or otherwise informed that the alleged conduct of Corporal Prisbe was "acceptable", we believe that this claim should be permitted to remain in this case, and be subject to further discovery by the parties. We note, however, that if that discovery yields insufficient evidentiary support for this claim for municipal liability, the defendants remain free to move for summary judgment on this claim.

In Monell v. Department of Social Services of the City of New York, 436 U.S. 658 (1978) ("Monell"), the Supreme Court held that a municipality may be held liable under 42 U.S.C. § 1983 for a constitutional injury that directly resulted from a municipality's policy, custom, or practice. Id. at 695. Accordingly, a Monell claim seeks to impose municipal liability for a constitutional injury that was causally connected to a municipal policy, custom, or practice. See id.; see also Carreno v. City of Newark, 834 F. Supp. 2d 217, 231 (D.N.J. 2011).

"Under Monell, a municipality cannot be subjected to liability solely because injuries were inflicted by its agents or employees." Jiminez v. All American Rathskeller, Inc., 503 F.3d 247, 249 (3d Cir. 2007). Instead, "it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." Id. (quoting Monell, 436 U.S. at 694). It is essential to a Monell claim that there be a "direct causal link between a municipal policy or custom and the alleged constitutional deprivation" in order to establish municipal liability. City of Canton v. Harris, 489 U.S. 378, 385 (1989).

Guided by these threshold principles, the Third Circuit Court of Appeals has explained that there are "three situations where acts of a government employee may be deemed to be the result of a policy or custom of the governmental entity for whom the employee works, thereby rendering the entity liable under § 1983:"

> The first is where the appropriate officer or entity promulgates a generally applicable statement of policy and the subsequent act complained of is simply an implementation of that policy. The second occurs where no rule has been announced as policy but federal law has been violated by an act of the policymaker itself. Finally, a policy or custom may also exist where the policymaker has failed to act affirmatively at all, [though] the need to take some action to control the agents of the government is so obvious, and the inadequacy of existing practice so likely to result in the violation of constitutional rights, that the policymaker can reasonably be said to have been deliberately indifferent to the need.

Natale v. Camden County Corr. Facility, 318 F.3d 575, 584 (3d Cir. 2003) (internal

quotation marks and citations omitted).  Subsequently, the appeals court provided

further guidance regarding the ways in which a government policy or custom may be

established:

> We have also observed that a government policy or custom can be
> established in two ways.  See Andrews v. City of Philadelphia, 895 F.2d
> 1469, 1480 (3d Cir.1990).  The plaintiffs may establish a government
> policy by showing that a "decisionmaker possess[ing] final authority to
> establish municipal policy with respect to the action" issued an official
> statement of policy.  Pembaur v. City of Cincinnati, 475 U.S. 469, 481,
> 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986).  The plaintiffs may establish
> that a course of conduct constitutes a "custom" when, though not
> authorized by law, "such practices of state officials [are] so permanent
> and well settled" that they operate as law.  Monell, 436 U.S. at 690, 98
> S.Ct. 2018.  In either instance, the plaintiffs have the burden of showing
> that a government policymaker is responsible by action or acquiescence
> for the policy or custom. Andrews, 895 F.2d at 1480.  We have also held
> that, at a minimum, the government must act with deliberate indifference
> to the purported constitutional deprivation in order to ground liability.
> San Filippo v. Bongiovanni, 30 F.3d 424, 445 (3d Cir.1994).

Jiminez, 503 F.3d at 250.  In cases where a plaintiff is predicating a Monell claim on

an alleged failure to train officers or other employees, the Third Circuit has further

explained:

> a municipality's failure to train police officers only gives rise to a
> constitutional    violation when that failure amounts to deliberate
> indifference to the rights of persons with whom the police come into
> contact.  City of Canton, Ohio v. Harris, 489 U.S. 378, 388, 109 S.Ct.
> 1197, 103 L.Ed.2d 412 (1989). We have held that a failure to train,

discipline or control can only form the basis for section 1983 municipal liability if the plaintiff can show both contemporaneous knowledge of the offending incident or knowledge of a prior pattern of similar incidents and circumstances under which the supervisor's actions or inaction could be found to have communicated a message of approval to the offending subordinate. See Bonenberger v. Plymouth Township, 132 F.3d 20, 25 (3d Cir.1997).

Montgomery v. De Simone, 159 F.3d 120, 126-27 (3d Cir. 1998).  It is "only where a failure to train reflects a 'deliberate' or 'conscious' choice by a municipality . . . can a city be liable for such a failure under § 1983."  Harris, 489 U.S. at 389.  Thus, where Monell claims are based upon an alleged failure to train officers, the municipality's training program must be so inadequate that "in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy [of the current training] so likely to result in the violation of constitutional rights, that the policy makers of the city can reasonably be said to have been deliberately indifferent to the need."  Id. at 390.

With these guidelines in mind, and although we believe this is a close issue, we find that plaintiff has adequately alleged facts sufficient to state a claim for Monell violations relating to Corporal Prisbe's alleged conduct and the police department's response to, or facilitation of, that conduct.  Although the defendants suggest that the plaintiff has brought claims against the municipality simply on a theory that the

municipality has *respondeat superior* liability for the conduct of an individual police officer as a matter of law, we believe that reading the complaint in the light most favorable to the plaintiff reveals that he is alleging more than that.

While he lacks specificity regarding actual policies and practices prescribed by the City of Harrisburg, the plaintiff at this early stage of the litigation has alleged that the City has been on notice of a need for further training of its police officers relating to the kind of conduct alleged in the complaint (Doc. 1 at ¶ 56); that the City has failed to act after it has been determined that its police officers have violated constitutionally protected rights, and where its officers have been repeatedly named in citizen complaints (id. at ¶ 60); and that the City has not followed its own internal affairs policies to investigate, discipline, and retrain its officers for the kind of misconduct alleged in this case (id. at ¶ 61). Although these averments are somewhat general, and necessarily rely upon evidence not yet discovered in this case, they nonetheless find some additional support in other allegations in the complaint. These allegations include a claim that immediately following the May 6, 2012 incident, and perhaps for some time thereafter, the police department refused to respond to the Hunters when they sought the return of Mr. Hunter's identification and to complain about Corporal Prisbe's alleged conduct, and that "Corporal Prisbe's supervisor

called Mr. Hunter once to notify him that he believed Corporal Prisbe's conduct was acceptable." (Id. at ¶¶ 21-22, 24.)

Although these allegations are somewhat thin, and although the standard for asserting municipal liability under Monell is a challenging one, we nonetheless find at this point that the plaintiff has adequately pleaded a claim for Monell liability relating to the alleged underlying conduct of Corporal Prisbe in this case and the City's response thereto, and we thus find that the motion to dismiss this claim should be denied, and that the parties proceed with discovery on this claim. The question of whether these allegations can withstand summary judgment is an issue which must await another time, and another proceeding. See Brown v. Muhlenberg Twp., 269 F.3d 205 (3d Cir. 2001)(summary judgment on Monell failure to train claim).

## V.    **ORDER**

Accordingly, for the foregoing reasons, IT IS HEREBY ORDERED THAT the defendants' motion to dismiss is GRANTED with respect to the plaintiff's claims under the Fifth Amendment set forth in Counts II and V, and for substantive due process violations under the Fourteenth Amendment set forth in Counts II, IV, and V of the complaint. With respect to all other claims alleged in the complaint, the motion to dismiss is DENIED.

*/s/ Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge